UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
Techno-Comp, Inc.,

       Plaintiff,      **MEMORANDUM & ORDER**

  - against -          14-cv-5152 (SLT) (VMS)

Anthony Arcabascio,

       Defendant.
-----------------------------------------------------------X
**TOWNES, United States District Judge,**

  Plaintiff Techno-Comp, Inc. ("Techno-Comp") filed this action on September 9, 2014, invoking the Court's diversity jurisdiction to recover monies from Defendant Anthony Arcabascio. Currently before the Court are (1) defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and (2) plaintiff's cross-motion seeking leave to amend the complaint. For the following reasons, Arcabascio's motion to dismiss is granted in part and denied in part and Techno-Comp's cross-motion to amend is denied with leave to renew within thirty days of the date of this order.

## BACKGROUND:

  During the second half of 2007, Techno-Comp, a New Jersey corporation, and Crimson Technologies, Inc., ("Crimson"), a New York corporation entered into an agreement ("Agreement") under which Techno-Comp would provide consulting services to Crimson. (Compl. ¶ 12.) Crimson is owned and controlled by Arcabascio and his business partner, Maria Connelly, both residents of New York. Per the Agreement, Connelly represented to Techno-Comp's president, Sanjay Gundala, that Crimson would "promptly" pay Techno-Comp for services rendered. (Compl. ¶ 13.)

Thereafter, Techno-Comp provided consulting services to Crimson, but Crimson paid only a few of the many invoices sent by Techno-Comp. (Compl. ¶ 13.) Connelly and Gundala exchanged emails about Crimson's failure to make payments, in which Connelly allegedly misled Techno-Comp into continuing to provide services despite Crimson's non-payment. For example, on October 3, 2008, Connelly emailed Gundala that she had sent a check in the mail, however several weeks later, on October 24, 2008, Connelly admitted that no check had been sent. (Compl. ¶¶ 20-21.) By April 2009, all of Techno-Comp's contracted for services had been rendered to Crimson. At that point, Crimson's outstanding balance to Techno-Comp was over $170,000. (Compl. ¶ 3.)

According to plaintiff's complaint, on March 28, 2013, Techno-Comp filed a complaint against Crimson and Connelly in the Superior Court of New Jersey, captioned *Techno-Comp Inc. v. Crimson Technologies Inc. and Maria Connelly.* ("New Jersey Action") (Compl. ¶ 44.) Techno-Comp's complaint alleged, among other things, that Connelly's actions constituted fraud and conversion. In the New Jersey Action, on June 18, 2013, a default judgement order was entered against Connelly and Techno-Comp. (Exhibit #4, Decl. of Michael S. Horn.) Arcabascio was not joined as a party in the New Jersey Action.

When filing the New Jersey Action, Techno-Comp was unaware that there was a pending bankruptcy case involving Connelly. On or about April 12, 2010, Connelly had filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* On June 19, 2013, Techno-Comp filed a motion to reopen Connelly's bankruptcy case to add Techno-Comp as a creditor. (Compl. ¶ 47.) On August 5, 2013, the Bankruptcy Court granted Techno-Comp's motion. Accordingly, on September 19, 2013, Techno-Comp filed an

adversarial proceeding seeking recovery for Connelly's fraudulent and negligent misrepresentation. (Compl. ¶ 49.) Discovery is currently ongoing in that case. (Compl. ¶ 50.)

During discovery in the bankruptcy proceedings, Techno-Comp learned from Arcabascio's bank records that from August 2008 to December 2009, there were numerous transfers of funds from Crimson's accounts to Arcabascio's personal account, including transfers that took place after Techno-Comp had rendered its services and was owed payment. Indeed, the last four transfers occurred at a time when the company was insolvent. (Compl. ¶ 40.) Additionally, Crimson's 2009 federal tax returns revealed that Crimson loaned Arcabascio $943,129. (Compl. ¶ 41.) Connelly testified that the loan amount exceeded any funds that Arcabascio had put into Crimson. (Compl. ¶ 42.) Further, Techno-Comp alleges that Crimson had drawn down its business line of credit with Wilbur National Bank. (Compl. ¶ 37.)

On September 9, 2014, Techno-Comp commenced the instant action against Arcabascio for money damages in the amount of $177,450 – the amount due to Techno-Comp under the contract. The Complaint alleges (1) tortious interference with a contract, (2) fraud, (3) fraudulent conveyance under New York Debtor and Creditor Law §§ 273, 274, 276, and 278, (4) unjust enrichment, and (5) conversion.

## DISCUSSION:

I. **Motion to Dismiss**

*A. Legal Standard*

Arcabascio brings this motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Techno-Comp failed to state a claim upon which relief can be granted, and that the claims are barred by *res judicata*.

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). All factual allegations contained in the complaint are assumed true, however this assumption is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. A pleading that does nothing more than recite conclusory statements is inadequate to "unlock the doors of discovery." *Id.* at 678–679. A court is generally restricted to consider only facts stated in the complaint and documents incorporated therein by reference. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

### B. Techno-Comp's Complaint is not Barred by Res Judicata

As a preliminary matter, Arcabascio argues that this action is barred by the doctrine of *res judicata* because Techno-Comp sued Crimson and Connelly for claims arising out of Crimson's breach of the Agreement in the New Jersey Action and failed to join Arcabascio in that action.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); 28 U.S.C. § 1738. Accordingly, this Court gives the default judgment entered against Crimson and Connelly in the New Jersey Action the same preclusive effect as it would have in a New Jersey state court.

New Jersey applies the so-called 'entire controversy doctrine,' which "is essentially New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Products, Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997); *see also McNeil v. Legislative Apportionment Comm'n of State*, 177 N.J. 364, 395 (2003) (describing the "closely linked concepts of *res judicata* and the entire controversy doctrine"). The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer v. New Jersey Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015) (citations and quotation marks omitted). "In determining whether a subsequent claim should be barred ..., the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions." *Id.* (citations and quotation marks omitted). "It is the core set of facts that provides the link between distinct claims" and there "is no requirement that there be a commonality of legal issues." *Id.* (citations and quotation marks omitted). However, the "polestar of the application of the rule is judicial fairness." *Id.* (citations and quotation marks omitted). Thus, "[t]he entire controversy doctrine is inapplicable to, and does not apply to bar component claims either unknown, unarisen or unaccrued at the time of the original action." *Thurman v. Lindenwold Ctr. LLC*, No. A-5364-12T4, 2015 WL 998716, at *6 (N.J. Super. Ct. App. Div. Mar. 9, 2015). "When 'considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant has had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" *Id.* (quoting *Gelber v. Zito P'ship*, 147 N.J. 561, 565 (1997).

In New Jersey, a default judgment is "a valid and final adjudication on the merits" and may be given preclusive effect. *Garris-Bey v. Aurora Loan Servs., LLC*, No. CIV.A. 11-6115 JLL, 2012 WL 694719, at *2 (D.N.J. Mar. 1, 2012); *Mori v. Hartz Mountain Dev. Corp.*, 193 N.J. Super. 47, 56 (N.J. App. Div. 1983) ("[T]he entire controversy should be invoked, notwithstanding that a default judgment has been entered," where a party, "with full knowledge of the earlier litigation, withheld his legal fire."). However, under the circumstances here, given the procedural posture of the case, the Court cannot determine that the entire controversy doctrine bars Techno-Comp's claims. Techno-Comp alleges that it dealt exclusively with Connelly and was unaware of the allegedly fraudulent conveyances made by Arcabascio until late 2013 during discovery in the adversarial proceeding in Connelly's bankruptcy. Given that Techno-Comp did not discover Arcabascio's allegedly fraudulent conveyances until after the June 18, 2013 default judgment order was entered, at this juncture while drawing all reasonable inferences in Techno-Comp's favor, it would be unfair to apply the entire controversy doctrine to bar claims against Arcabascio.

### C. *Choice of Law*

Techno-Comp's common law claims arise under either New York or New Jersey law. A federal court sitting in diversity applies the choice-of-law principles of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 61 S.Ct. 1020 (1941). In undertaking the choice of law analysis, New York courts first address whether an actual conflict of laws exists. *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223 (1993). If there is a conflict of law, New York Courts apply an "interest analysis" to decide which state's law to apply. *Conney v. Osgood Mach, Inc.*, 81 N.Y.2d 66, 72 (1993); *Auten v. Auten*, 308 N.Y. 155, 161 (1954) (noting "the merit of [the interest analysis test] approach is that it gives to the place having the most interest

in the problem paramount control over the legal issues arising out of a particular factual context) (quotation marks and citation omitted). In deciding which jurisdiction's law to apply in a tort dispute, courts consider "the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort." *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985).

Here, the parties agree that there are multiple actual conflicts of law. Arcabascio is a resident of New York and his company, Crimson, operates out of New York. Techno-Comp is a New Jersey corporation. The causes of action arise out of Arcabascio's allegedly fraudulent conduct in New York. Additionally, Techno-Comp, which provides the only link to New Jersey, argues that New York law should apply. Given that the interactions at the heart of this case all occurred in New York, and that the only link to New Jersey – the plaintiff – advocates for the application of New York law, this Court finds that New York has the greatest interest in resolving the instant action. Accordingly, the Court will apply New York law.

### D. *Techno-Comp's Fraud Claims Are Not Pleaded With Sufficient Particularity*

Techno-Comp brings a common law fraud claim on the grounds that Arcabascio represented to the outside world that Crimson was a legitimate company, while, in reality, the corporation could not pay its debts because Arcabascio was diverting its funds into his personal accounts. (Compl. ¶ 59.) The complaint alleges, in a conclusory fashion, that Techno-Comp relied on these representations when it agreed to provide computer consulting services to Crimson. (Compl. ¶ 60.)

Under New York law, the elements of a fraud claim are "misrepresentation or concealment of a material fact, falsity, scienter by the wrongdoer, justifiable reliance on the deception, and resulting injury." *Zanett Lombardies, Ltd. v. Maslow*, 29 A.D.3d 495 (N.Y. App. Div. 1st Dep't 2006). Rule 9(b) of the Federal Rules of Civil Procedure requires that allegations

of fraud be pleaded with particularity. Fed. R. Civ. P. 9(b). This heightened pleading requirement is intended to "'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

Under Rule 9(b), a fraud claimant must allege "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouakine v. MacFarlane*, 897 F.2d 75, 79 (2d Cir. 1990). However, "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "Thus, while the actual ... fraud alleged must be stated with particularity[,] ... the requisite intent of the alleged perpetrator of the fraud need not be alleged with great specificity." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000). Rule 9(b) does not do away with Rule 8(a); rather, the Court must "balance[ ] the requirements of Rule 9(b) and their overall purposes with the requirements of notice pleading under Rule 8(a)." *Goldin Associates, L.L.C. v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 CIV. 8688(WHP), 2003 WL 22218643, at *6 (S.D.N.Y. Sept. 25, 2003).

As noted above, a fraud claimant must allege "the time, place, speaker, and sometimes even the content of the alleged misrepresentation." *Ouakine*, 897 F.2d at 79. Thus, a plaintiff's complaint cannot survive a motion to dismiss if it does not allege any specific communications whatsoever with the defendant. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (1993) (in a securities fraud case, noting that "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants'" and "[t]he mere fact that the [individual defendants] were controlling persons at [the defendant company] does not link them

8

to the statements;" Rule 9(b) requires that "plaintiffs ... allege that the [individual defendants] *personally* knew of, or participated in, the fraud") (emphasis in original).

Here, the complaint alleges in a conclusory fashion that Techno-Comp relied on Arcabascio's fraudulent misrepresentations of Crimson's legitimacy. But the complaint does not include any factual allegations of any *specific* statement or representation made by Arcabascio to Techno-Comp, let alone any false or misleading statements.[1] The only specific statements alleged in the complaint – made in a series of emails beginning in October 2008 – were made by Connelly. There is no reason to impute those statements to Arcabascio.[2] Therefore, plaintiff has failed to meet the heightened pleading requirement of Rule 9(b) and Arcabascio's motion to dismiss Techno-Comp's fraud claim is granted.

### E. *Techno-Comp's Tortious Interference with Contract and Conversion Claims are Time-Barred*

Arcabascio argues that Techno-Comp's claims for tortious interference with contract and conversion are time barred by the three-year statute of limitations applicable to such claims. Techno-Comp responds that the statute of limitations should be tolled because it did not learn of Arcabascio's conduct until 2013.

Under New York law, claims for tortious interference with contract and conversion are governed by a three-year statute of limitations. *St. John's Univ., New York v. Bolton*, 757 F.

---

[1] In support of its opposition, Techno-Comp submits the declaration of its president, which this Court does not consider because of the procedural posture of the case. However, the Court observes that Gundala declares that "[a]t the time when the agreement was formed between Techno-Comp and Crimson, [she] was not aware of the existence of Anthony Arcabascio... [and] was led to believe by Connelly that she was the only owner of Crimson and ... would be the only person that [*sic*] would control the funds that were designated to be paid to Techno-Comp." (Decl. of Gundala ¶ 4.)

[2] Indeed, Connelly's October 2008 misstatements have already been the basis of a lawsuit by Techno-Comp against Connelly and Crimson. (Horn Decl. Ex. 1, New Jersey Action Compl., Count VI.)

9

Supp. 2d 144, 174, 179 (E.D.N.Y. 2010) (citing N.Y. C.P.L.R. §§ 214(3), (4)). Tortious interference with contract claims accrue when the injury is sustained, not at the time the plaintiff discovers the injury. *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 292 (N.Y. 1993). Likewise, conversion claims accrue from the time of theft regardless of a plaintiff's knowledge of the conversion. *Solomon R. Guggenheim Found. v. Lubell*, 77 N.Y.2d 311, 318 (1991). Here, Techno-Comp's tortious interference with contract claim accrued when Crimson breached its contract in April 2009, when Techno-Comp completed all of the consulting services due under the Agreement and Crimson failed to promptly pay nine outstanding invoices. (Compl. ¶16.) Thus, Techno-Comp had until April 2012 to commence its tortious interference with contract claims. Techno-Comp's conversion claim accrued at the time of theft, at the latest, December 2009 – the date of the last transfer from Crimson to Arcabascio. (Compl. ¶39hh.) Thus, Techno-Comp had until December 2012 to commence its conversion action. However, this action was not commenced until September 2, 2014, and, accordingly, Techno-Comp's tortious interference with contract and conversion claims are time barred unless the applicable statutes of limitations are tolled.

There are certain circumstances under which a court will toll the statute of limitations. Under the doctrine of equitable tolling, the statute of limitations may be tolled if: "(1) the plaintiff timely filed the complaint in the wrong forum, (2) the defendant actively misled the plaintiff, or (3) the plaintiff in some extraordinary way had been prevented from complying with the limitations period." *O'Hara v. Bayliner*, 82 N.Y.2d 636, 646 (1997). As relevant here, the "statute of limitations may be tolled while a defendant fraudulently conceals facts that would have alerted the plaintiff to his cause of action." *Solow v. Stone*, 994 F. Supp. 173, 182 (1998). Allegations of fraudulent concealment are held to the heightened pleading requirements set out

10

in Rule 9(b). *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983) (finding statute of limitations not tolled by "generalized and conclusory allegations of fraudulent concealment[, which] do not satisfy the requirements of Rule 9(b).").

Techno-Comp's complaint does not plead any basis for tolling. Techno-Comp does not allege that it filed its complaint in the wrong forum. Indeed, it did not commence the New Jersey Action until March 28, 2013, after the New York limitations period had already run. Nor does Techno-Comp allege that it was prevented from complying with the limitations period by any extraordinary circumstances. Nowhere in the complaint does Techno-Comp allege fraudulent concealment, let alone with particularity. Indeed, the complaint does not allege any conduct by Arcabascio after 2009 that might have impeded Techno-Comp in filing a timely complaint. Accordingly, since Techno-Comp has failed to allege facts sufficient to justify tolling the limitations period, the claims for tortious interference with contract and conversion are dismissed as time-barred.

### *F. Techo-Comp's Unjust Enrichment Claims are not Adequately Pleaded*

Techno-Comp alleges that Arcabascio was unjustly enriched when he took money from Crimson, because Crimson received Techno-Comp's consulting services and neither Crimson nor Arcabascio ever paid for those services.

"[T]he theory of unjust enrichment lies as a quasi-contract claim and contemplates an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516 (2012) (internal citations and quotation marks omitted). It is "rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." *Id.* Under New York law, to state a claim for unjust enrichment, a plaintiff must allege "(1) that the defendant benefitted; (2) at the

11

plaintiff's expense; and (3) that equity and good conscience require restitution." *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). "[T]he essential inquiry in any action for unjust enrichment ... is whether it is against equity and good conscience to permit the defendant to retain what is sought to be recovered." *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 215 (2007).

An unjust enrichment claim will be dismissed if the connection between the parties is "too attenuated." *Sperry*, 8 N.Y.3d at 216. New York courts have not enunciated a clear test for determining whether a relationship is "too attenuated." However, it is clear that privity is not required. *Id.* Nor does New York law "require an unjust enrichment plaintiff to plead 'direct dealing,' or an 'actual, substantive relationship' with the defendant." *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 403 (E.D.N.Y. 2010) (collecting cases for the proposition that an indirect purchaser may bring an unjust enrichment claim against the manufacturer of an end-product, but may not sue the manufacturers of its component parts). However, some minimum dealings or contacts are required. *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 517-18 (2012) (holding there could be no unjust enrichment claim where the parties "simply had no dealings with each other" and no "contact regarding the purchase transaction" from which defendant benefited, although the defendant "knew at all times" that plaintiff was providing services).[3]

In *Georgia Malone*, the New York Court of Appeals affirmed the Appellate Division, First Department's rejection of an "awareness" standard, under which a defendant could be liable for accepting a benefit while "aware" that the plaintiff was owed compensation for its services. *Id.* ("[M]ere knowledge that another entity created [a benefit without receiving compensation] is

---

[3] *Cf Bradkin v. Leverton*, 26 N.Y.2d 192, 198 (1970) (holding that corporation insider who learned of an opportunity from the plaintiff and privately arranged to take it himself, thereby depriving his corporation of the opportunity and the plaintiff of his finder's fee "obtained the benefit of the plaintiff's labors and must compensate him for such services.").

insufficient to support a claim for unjust enrichment."). The Appellate Division had reasoned that:

> A mere awareness standard would result in liability for anyone who simply knew of the plaintiff's existence. Similarly, ... an unjust enrichment claim can[not] exist solely because defendants may have profited, in one form or another, from plaintiff's work [because s]uch a broad reading improperly expands the claim of unjust enrichment, absent any contention that defendants induced plaintiff to do the work. It is this lack of reliance or inducement that is fatal to the unjust enrichment claim against the third parties[.]

*Georgia Malone & Co. v. Rieder*, 86 A.D.3d 406, 409 *aff'd by Georgia Malone*, 19 N.Y.3d 511. Likewise, in *Mandarin Trading Ltd. v. Wildenstein Mandarin*, the Court of Appeals rejected an attempt by the buyer of a painting to sue the provider of an inflated appraisal letter for unjust enrichment because the connection between the buyer and the appraiser was too attenuated. 16 N.Y.3d 173, 182 (2011). The court observed that the pleadings failed to establish a relationship between the parties that would have caused reliance or inducement. *Id.* ("[T]here are no indicia of an enrichment that was unjust where the pleadings failed to indicate a relationship between the parties that could have caused reliance or inducement."). Together, *Georgia Malone* and *Mandarin Trading* teach that some relationship between the plaintiff and defendant which would justify the plaintiff's expectation of payment is required.

Here, the connection between Arcabascio and Techno-Comp is too attenuated to support a claim for unjust enrichment. Techno-Comp does not allege that Arcabascio and Techno-Comp had any relationship, dealings or contact. The complaint does not allege that Arcabascio knew of Crimson's agreement with Techno-Comp. Moreover, while the complaint is filled with factual allegations of conversations between Connelly and Techno-Comp, it is devoid of any interactions between Arcabascio and Techno-Comp, let alone any interactions which could have caused reliance or inducement. Accordingly, the unjust enrichment claims are dismissed.

## G. Techno-Comp's Fraudulent Conveyance Claims Survive

Techno-Comp alleges that, as a creditor of Crimson, it has a claim against Arcabascio for fraudulently transferring funds to himself instead of paying Techno-Comp in violation of New York Debtor and Creditor Law ("DCL") §§ 273, 274, 276 and 278. (Compl. ¶ 69.)

### A. DCL § 276

To survive a motion to dismiss on a DCL § 276 claim, a plaintiff must allege that a defendant acted with "actual intent to hinder, delay, or defraud" creditors and must plead its allegations with particularity as required by Rule 9(b). *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987); DCL § 276. Due to the difficulty of proving intent, plaintiffs may rely on "badges of fraud" – "circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (internal citation and quotation marks omitted). The "badges of fraud" include: "a close relationship between the parties to the alleged fraudulent transaction; a questionable transfer not in the usual course of business; inadequacy of the consideration ... and retention of control of the property by the transferor after the conveyance." *Id.* "Of course, the flip side of these badges of fraud is that their absence—or evidence that fair consideration was paid, the parties dealt at arm's-length, the transferor was solvent, the transfer was not questionable or suspicious, the transfer was made openly, or the transferor did not retain control—would constitute evidence that there was no intent to defraud." *Lippe v. Bairnco Corp.*, 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003).

Here, the complaint does not provide any direct evidence of intent to defraud, but does include a number of factual allegations that support an inference that Arcabascio took money from Crimson with an intent to defraud its creditors. First, there is a close relationship between

the parties to the alleged fraudulent transaction. Arcabascio was one of the two co-owners of Crimson. Second, the transfers were not made in the usual course of business. The complaint alleges that the $943,129 loan given by Crimson to Arcabascio "far exceeded" any amount of money that Arcabascio put into Crimson (Compl. ¶ 42), and Arcabascio had no commercial basis to move over $130,000 of the Crimson's funds to his personal bank account in a series of over 30 cash transfers. (Compl. ¶¶ 39-40.) Third, there was no adequate consideration, or indeed, any consideration, given by Arcabascio to Crimson in exchange for the loan or cash transfers. Finally, the timing of these conveyances is suspicious. Arcabascio took cash out of the Crimson's accounts when Techno-Comp was owed money and the last four transfers took place when Crimson was insolvent. These allegations are sufficient to plead a claim for a fraudulent conveyance undertaken with intent to defraud under DCL § 276.

### B. DCL §§ 273, 274

In addition to 'actual' fraud, New York law permits fraudulent conveyance claims based on 'constructive' fraud. "Constructive fraud may be defined as a breach of duty which, irrespective of moral guilt and intent, the law declares fraudulent because of its tendency to deceive, to violate a confidence, or to injure public or private interests which the law deems worthy of special protection." *Brown v. Lockwood*, 76 A.D.2d 721, 730-731 (N.Y. App. Div. 2d Dep't 1980). Under DCL §§ 273-274, a conveyance by a debtor is constructively fraudulent if it is made without "fair consideration" and if either (1) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273, or (2) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274. Such claims need not be pleaded with particularity under Rule 9(b), but instead, "the pleading standards of Rule 8 ... apply, subject, of course, to

the 'plausibility' requirements of *Iqbal* and *Twombly*." *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12-CV-4849 ENV CLP, 2013 WL 6795963, at *6-8 (E.D.N.Y. Dec. 23, 2013).

Here, there is no claim that Arcabascio gave any consideration for either the $943,129 loan or over $130,000 in cash he took from Crimson. (Compl. ¶¶ 39-41.) Moreover, it is undisputed that Techno-Comp qualifies as a creditor of Crimson under DCL § 270. Finally, the complaint sufficiently alleges that transfers were made at a time when the company was nearing insolvency, and indeed, the last four cash transfers took place when Crimson was insolvent, and 2009 – the year of the $943,129 loan – was Crimson's last year in operation. (Compl. ¶¶ 40-41.) Arcabascio's assertions that Techno-Comp has failed to plead intent to defraud are irrelevant, as intent is not an element of a fraud claim under DCL §§ 273 and 274. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) ("[A] transfer made [from an insolvent or near insolvent entity] without fair consideration constitutes a fraudulent conveyance, regardless of the intent of the transferor."). Accordingly, Techno-Comp's DCL§§ 273 and 274 claims are sufficiently pleaded.

### C. N.Y. DCL § 278

DCL § 278(1) provides:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or immediately from such a purchaser,
> a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
> b. Disregard the conveyance and attach or levy execution upon the property conveyed.

"The purpose of the remedy fashioned by D.C.L. § 278 is to grant the creditor the right 'to be paid out of assets to which he is actually entitled and to set aside the indicia of ownership which

apparently contradict that right.'" *Gasser v. Infanti Int'l, Inc.*, 353 F. Supp. 2d 342, 356 (E.D.N.Y. 2005) (internal citation omitted).

Here, as the Court has already explained, Techno-Comp's complaint sufficiently alleges that the conveyances in question were fraudulent, and thus, Techno-Comp may move to set them aside.

## II. Plaintiff's Cross-Motion to Amend

Courts freely grant leave to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). After responsive pleadings have been filed, a party may amend its pleading "by leave of court or by written consent of the adverse party." *Id.* A "district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (internal quotation marks omitted). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Martin v. Dickson*, 100 F. App'x 14, 16 (2d Cir. June 2, 2004) (summary order); *See Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied.").

Techno-Comp moves to amend its complaint to add additional factual allegations about the Agreement, the New Jersey Action, Connelly's bankruptcy proceedings, and additional financial records. However, the factual allegations the plaintiff seeks to add would not alter the Court's analysis. The additional factual allegations only confirm that Techno-Comp was not aware of Arcabascio at the time that it entered into the Agreement and their relationship has remained attenuated – thus, Techno-Comp cannot state a claim for fraud or unjust enrichment against Arcabascio. Likewise, the factual allegations are irrelevant to the timeliness of the

tortious interference with contract and conversion claims.  Thus, the motion for leave to amend is denied because the proposed amendments would be futile.  If Techno-Comp nevertheless desires to amend its complaint to add further factual allegations in support of its remaining claims under the DCL, it may renew this motion by submitting a pre-motion conference letter and attaching its proposed amended complaint within 30 days of the date of this order.

## CONCLUSION

Arcabascio's motion to dismiss is granted in part and denied in part.  Techno-Comp's fraud, tortious interference with contract, conversion, and unjust enrichment claims are dismissed.  Techno-Comp may proceed with its claims under DCL §§ 273, 274, 276, and 278.  Techno-Comp's motion to amend its complaint is denied with leave to renew within thirty days of the date of this order.

**SO ORDERED.**

s/Sandra L. Townes

/SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
September 3, 2015